IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SENTINEL TECHNOLOGY GROUP, INC., : | |
| Plaintiff : | Civil Action No. 1:12-cv-00153 |
| : | |
| v. : | (Chief Judge Kane) |
| : | |
| INTERVID, INC., : | |
| Defendant : | |

### MEMORANDUM ORDER

Presently pending before the Court is Defendant Intervid, Inc.'s motion to dismiss or, in the alternative, to transfer venue. (Doc. No. 15.) For the reasons that follow, the Court declines to rule on the motion to the extent it seeks to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted and will transfer the case to the United States District Court for the Eastern District of Pennsylvania.

I.   BACKGROUND

Plaintiff Sentinel Technology Group, Inc. is a Pennsylvania corporation, offering "a wide variety of technology services to commercial and educational clients." (Doc. No. 7 ¶¶ 5-6.) In March 2003, Plaintiff became the main technology contractor for a closed circuit television project at Reading School District ("Reading"), located in Reading, Pennsylvania. (Id. ¶ 9.) In January 2007, Plaintiff successfully bid on a Reading project involving the installation of security cameras at various Reading buildings. (Id. ¶¶ 12-13.) In its bid, Plaintiff included the cost of equipment supplied by Defendant Intervid, Inc., a Maryland corporation that provides security and surveillance systems, as well as an additional fifteen percent of that cost. (Id. ¶¶ 7-8, 14-15.)

1

Upon entering into a business relationship with Plaintiff, Defendant purportedly sent a non-disclosure and confidentiality agreement ("the Agreement") to Plaintiff.  (Doc. No. 23 ¶ 2.) The Agreement states that it "governs the parties' rights and obligations with regard to . . . confidential technical and/or business information."  (Doc. No. 16-1 at 17.)  The Agreement defines confidential information in part as:

> business plans, source code, software documentation, financial analyses, marketing plans, customer names, customer lists, customer data, technical contacts, product plans, products, services, inventions, processes, designs, drawings, engineering or hardware configuration information, know-how, trade secrets, or any other proprietary or business information; and includes information disclosed to INTERVID by third parties pursuant to a nondisclosure agreement.

(Id.)  The Agreement also contains a forum selection clause, stating: "This agreement shall in all respects be governed by and construed in accordance with the laws of the State of Maryland, U.S.A., without regard to its conflict of laws principles, and the parties hereby submit to the exclusive jurisdiction of and venue in any federal or state court of competent jurisdiction located in the State of Maryland for the adjudication of any disputes arising under this agreement."  (Id.)

In November 2007, the parties developed a spreadsheet detailing the amounts that Defendant would bill to Plaintiff and the amounts that Plaintiff would bill to Reading in relation to the Reading project.  (Doc. No. 7 ¶ 17.)  The Reading project, as evidenced by the spreadsheet, was split into seven phases, with each phase involving the installation of security cameras at different school buildings.  (Doc. No. 7-2 at 1-2.)

According to Plaintiff, during a March 2008 meeting, the parties agreed that Defendant would act as the prime contractor with Reading "for all security technology services" and that Defendant would invoice Reading for all work relating to the Reading project.  (Doc. No. 1 ¶¶

22, 24, 26.) Plaintiff alleges that the parties also agreed that Plaintiff, in exchange for "relinquishing its direct relationship" with Reading, would act as a subcontractor to Defendant, and that Defendant would pay Plaintiff fifteen percent of the amounts billed to Reading. (Id. ¶¶ 27, 30-31, 40.) On March 30, 2009, Defendant wired a payment of $11,337.00 to Plaintiff for amounts owed in relation to Phase III of the Reading project. (Id. ¶ 48; Doc. No. 7-4.) Plaintiff contends that Defendant has failed to compensate Plaintiff for any other work it performed in relation to the Reading Project and the "citadel project," that Defendant and Reading have an ongoing business relationship, and that Defendant owes Plaintiff at least $225,000.00. (Id. ¶¶ 42, 49, 51; Doc. No. 20 ¶ 5.))

## II.   DISCUSSION

Defendant's motion to transfer venue to the United States District Court for the District of Maryland is premised on two alternative bases: (1) that the forum selection clause of the Agreement entered into by the parties mandates that this case be transferred to the District of Maryland; and (2) that the District of Maryland is a more convenient venue and best serves the interests of justice pursuant to 28 U.S.C. § 1404(a). (Doc. No. 16 at 22-26.)

Regarding Defendant's first basis for transfer, the Court must decide whether the Agreement and its forum selection clause apply to this dispute. See John Wyeth & Bro. Ltd. v. Cigna Int'l Corp., 119 F.3d 1070, 1073 (3d Cir. 1997) ("The question of the scope of a forum selection clause is one of contract interpretation."). The Agreement pertains to the disclosure of Defendant's confidential, technical, or business information, and the forum selection clause provides that the parties "submit to the exclusive jurisdiction of and venue in any federal or sate court of competent jurisdiction located in the State of Maryland for the adjudication of any

disputes arising under this agreement." (Doc. No. 16-1 at 17.) Plaintiff contends that the clause is not applicable because the instant dispute does not concern the disclosure of Defendant's confidential, technical, or business information. (Doc. No. 19 at 16-18.) The Court agrees. The instant dispute relates to the Reading project and the citadel project, neither of which are the subject of the Agreement. Moreover, as Plaintiff points out, the validity of the Agreement is questionable given that the copy attached to Defendant's motion is neither signed nor dated. (Id. at 16-18.) Accordingly, the Court will not transfer this case to the United States District Court for the District of Maryland on the basis of the language of the forum selection clause.

Second, the Court must consider, apart from the forum selection clause, whether venue is proper in the Middle District of Pennsylvania. Venue is proper if it is within:

> (1) a judicial district in which any defendant resides, if all defendants are resides of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such an action.

28 U.S.C. § 1391(b). In this case, venue is not proper in the Middle District of Pennsylvania by virtue of the first two subsections. First, Defendant does not reside in the Middle District of Pennsylvania. Second, the events giving rise to this dispute are the work performed – and still purportedly being performed – for Reading. The only event that allegedly occurred in the Middle District of Pennsylvania is the March 2008 meeting during which the parties agreed that Defendant would act as the prime contractor for the Reading project, a meeting that Defendant

contends never took place. (Doc. No. 22 at 12.)

The applicable statute for change of venue is 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Courts, however, "have not limited their consideration to the three enumerated factors in § 1404(a)" but have also "consider[ed] all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citation and internal quotation marks omitted). Although "there is no definitive formula or list of the factors to consider," courts commonly balance the "private and public interests protected by the language of § 1404(a)." Id.

Private interests that have been considered include:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. (internal citations omitted). Public interests that have been considered include:

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (internal citations omitted).

In support of its motion to transfer venue to the District of Maryland, Defendant argues

that its officers and important witnesses reside there, that relevant books, documents, and records are located there, and that it is far more convenient to defend this case there. (Doc. No. 16 at 25-26.) In opposition, Plaintiff contends that there is no basis for disturbing its choice of venue because both Plaintiff and Reading are located in Pennsylvania, the work performed by the parties occurred in Pennsylvania, the March 2008 meeting between the parties took place in Pennsylvania, documents in the control of Reading are located in Pennsylvania, and that important non-party witnesses work for Reading. (Doc. No. 19 at 19.)

The Court finds that the private and public interests do not weigh in favor of transferring this case to the District of Maryland but do weigh in favor of transferring this case sua sponte to the Eastern District of Pennsylvania. See Johnny v. Dep't of Homeland Sec. Immigration & Customs Enforcement, No. 11-cv-6559, 2012 WL 707036, at *1 (E.D. Pa. Mar. 6, 2012); Robinson v. Town of Madison, 752 F. Supp. 842, 846 (N.D. Ill. 1990) (a court's authority to transfer cases under 28 U.S.C. § 1404(a) does not depend on a motion, stipulation, or consent of the parties). While a plaintiff's venue preference "should not be lightly disturbed," Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), nearly all of Plaintiff's reasons for not transferring this case to the District of Maryland support transferring this case to the Eastern District of Pennsylvania, as Reading is located there, the work performed on the Reading and citadel projects occurred there, the Reading project is apparently ongoing, important non-party witnesses reside there, and relevant documents are located there. The Court, therefore, finds that the United States District Court for the Eastern District of Pennsylvania has a much greater interest in resolving this dispute, that the Eastern District is the most convenient venue, and that transfer to that district will best serve the interests of justice.

**ACCORDINGLY**, on this 23rd day of April 2012, **IT IS HEREBY ORDERED THAT:**

1. Defendant's first motion to dismiss or, in the alternative, to transfer venue (Doc. No. 5) is **DENIED AS MOOT**;

2. The above-captioned action is **TRANSFERRED** to the United States District Court for the Eastern District of Pennsylvania for further proceedings; and

3. Defendant's second motion to dismiss, or in the alternative, to transfer venue (Doc. No. 15) is **DENIED** to the extent that the motion seeks to transfer venue to the United States District Court for the District of Maryland, and the Court declines to rule on the motion to the extent that it seeks to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania